**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

SQUAREX PHARMACEUTICAL
CORPORATION, formerly known as
SQUAREX LLC,

               Plaintiff,

      v.

SPARTAN CAPITAL SECURITIES LLC,
a division of SPARTAN CAPITAL HOLDINGS,
LLC,

               Defendant.

-----------------------------------------------------------X

Civil Action No. 24-6880

**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

## COMPLAINT

Plaintiff SQUAREX PHARMACEUTICAL CORPORATION, formerly known as SQUAREX LLC, by and through its attorneys, the Law Offices of Victor M. Feraru, as and for its Complaint against Defendant SPARTAN CAPITAL SECURITIES LLC, a division of SPARTAN CAPITAL HOLDINGS, LLC, upon information and belief, alleges:

## PRELIMINARY STATEMENT

1.      In the matter before this honorable court, we present a case that starkly illustrates a breach of contract, underscored by a profound disparity in power and responsibility. The Plaintiff, SQUAREX PHARMACEUTICAL CORPORATION, formerly known as SQUAREX LLC (hereinafter referred to as "SQUAREX"), a company of noble purpose and dedication, has tirelessly worked towards alleviating the suffering of tens of millions afflicted with medical ailments.

2.      Plaintiff SQUAREX placed its trust, and indeed its very future, in the hands of Defendant SPARTAN CAPITAL SECURITIES LLC, a division of SPARTAN CAPITAL HOLDINGS, LLC (hereinafter "SPARTAN"), an investment bank, with the explicit agreement that Defendant SPARTAN would fulfill its contractual obligations to utilize their best efforts—*at least attempt to*—raise necessary funds and facilitate an Initial Public Offering ("IPO") to officially make shares of its company available to the general public.

3.      Regrettably, this trust was not only unmet but was handled with what can only be described as gross negligence, including but not limited to willful and deliberate misconduct by Defendant SPARTAN.

4.      Indeed, this breach transcends mere negligence—***it is a clear and egregious violation of the contract, characterized by deliberate actions and inactions that have significantly harmed Plaintiff SQUAREX***.

5.      The consequences of this breach are not abstract; they have tangible, detrimental effects on Plaintiff's operations, its central and noble mission to serve millions, and its financial health.

6.      The actions of Defendant SPARTAN, or rather the lack thereof, constitute material breaches of the contract. This is not a simple oversight or a failure to perform due to unforeseen circumstances, instead, it is a *calculated disregard* for the contractual obligations and the devastating impact such disregard would have on Plaintiff.

7.      Defendant's failure to act, coupled with its gross negligence and willful misconduct, directly led to Plaintiff's inability to go public as planned, resulting in significant financial losses, missed opportunities, and reputational damage. This case, at its core, is about holding Defendant accountable for their actions and inactions that have not only breached the

aforementioned contract, but have also jeopardized the Plaintiff's central mission and financial stability. Accordingly, Plaintiff seeks not only to recover the damages suffered but also to send a clear message that gross negligence, willful misconduct, and deliberate breaches of contract cannot and will not be tolerated.

8.      The severity of Defendant's breach and the profound impact it has had on the Plaintiff is beyond all bounds of decency and well below that the industrial standard of an investment bank.

9.      Plaintiff deserves just compensation for the damages incurred and a reaffirmation of the principle that contracts are to be honored, not disregarded at one's convenience.

10.      This case is a testament to the Plaintiff's resolve to seek justice and accountability in the face of gross negligence and deliberate misconduct by a party that was entrusted with a critical component of its future.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction 28 U.S. Code § 1332, in that both parties are citizens of two separate states, and the amount in controversy exceeds $75 thousand.

12.      Venue is properly set in this District under 28 U.S.C. §1391(b) since Defendant transacts business within this judicial district. Likewise, a substantial part of the acts and omissions causing this action occurred in the Southern District of New York. 28 U.S.C. § 1391(b). Additionally, the contract at issue expressly states that the specified venue for any disputes with respect to the agreement is within the jurisdiction of the Southern District of New York.

13.      Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendant because Defendant is present in the Southern

District of New York, so requiring an appearance therein does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Further, all of Plaintiff's claims arise from conduct and agreements that the Defendant engaged in in the Southern District of New York. Moreover, the parties jointly agreed to the venue being in the Southern District of New York.

14.     This court also has personal jurisdiction over Defendant under and consistent with the Constitutional requirements of Due Process in that Defendant, acting through their agents or apparent agents, committed one or more of the following:

a. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

b. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

c. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if it

d. regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

e. expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

f. owns, uses or possesses any real property situated within the state.

*See* N.Y. C.P.L.R. 302 (McKinney).

## JURY DEMAND

15.    The Plaintiff demands a jury trial in this action.

## PARTIES

16.    Plaintiff SQUAREX PHARMACEUTICAL CORPORATION, formerly known as SQUAREX LLC (hereinafter referred to as "SQUAREX"), is a corporation formed under the laws of the State of Delaware, with a corporate home located at the address known as 7460 Pinehurst Road, St. Paul, Minnesota 55115.

17.    Defendant SPARTAN CAPITAL SECURITIES, LLC (hereinafter, "SPARTAN"), is a limited liability company formed under the laws of New York with an address listed as 45 Broadway, 19th Floor, New York, New York 10006.

## RELEVANT FACTS

18.    At all times relevant to this Complaint, Defendant SPARTAN is a brokerage firm regulated by the rules and regulations of the Financial Industry Regulatory Authority (FINRA).

19.    On or about March 10, 2023, Plaintiff and Defendant SPARTAN entered into an agreement (hereinafter, the "Agreement") to have Defendant SPARTAN act as the exclusive agent, advisor and underwriter for Plaintiff's IPO. Of note, the Agreement *did not* allow for either party to terminate the agreement prior to the term's completion 6 months later.

20.    Of note, the Agreement and the anticipated IPO was conditioned upon the satisfactory completion by Defendant SPARTAN of its due diligence investigation and analysis of the Company's officers, financial statements and projected financial statements as required by the Securities and Exchange Commission pursuant to meeting all regulatory requirements for the IPO.

21.     Additionally, the Agreement also specified a term of the Agreement of 6 months and did not allow either party to terminate the Agreement during the 6 month period (which means through September 10, 2023).

22.     At all times relevant to this Complaint, Plaintiff exercised the requisite due diligence on their part pursuant to satisfying the regulatory requirements with respect to the IPO. Plaintiff filed an S-1 with the U.S. Securities and Exchange Commission to receive permission to go public via IPO and went through a few rounds of comments and responses with the SEC, until during the Agreement with Defendant SPARTAN Plaintiff resolved the one remaining comment from the SEC and effectively had approval to conduct its IPO.

23.     On or about April 27, 2023, shortly after the Agreement was executed and with more than four months left on the Agreement, Defendant SPARTAN—after making little to no effort to recruit investors to facilitate Plaintiff's IPO—immediately terminated the Agreement, in plain breach of the Agreement, which did not allow either party to terminate it before September 10, 2023, placing Plaintiff in a precarious position with its scheduled IPO quickly approaching.

24.     Additionally, at all times relevant to this Complaint, upon information and belief the Defendant SPARTAN ***made no attempt whatsoever*** to contact investors, to arrange meetings with investors, or to solicit investment from investors, as it was required to under the Agreement, to facilitate the scheduled IPO and ***completely failed to perform as obliged under the Agreement***.  Indeed, Defendant SPARTAN ***made no attempt*** to perform its obligations under the Agreement.

25.     In addition, on or about May 2023, following Defendant's willful, malicious and deliberate breach, Plaintiff was left with no other option but to withdraw its IPO plans by publicly withdrawing the published S-1. Of note, but for Defendant's breach, Plaintiff—by and

through adhering to every regulation set forth by the Securities and Exchange Commission—was on track to have its IPO as scheduled as initially planned, as it had resolved the one remaining comment from the SEC on the Plaintiff's S-1 for approval of the IPO, effectively meaning that it had approval from the SEC to proceed with the IPO.

26.     As a result of the Defendant's breach, Plaintiff has suffered irreparable reputational damages, especially since the IPO was already publicly announced and scheduled, leaving potential investors and customers alike to erroneously believe upon withdrawal of the IPO and S-1 that Plaintiff has serious issues with either its business, its financials, or its products.

27.     As one example of the reputational and financial harm to Plaintiff resulting from Defendant's breach, since the Defendant's breach and as a result of that breach, Plaintiff has *already* had a potential underwriter offer a contract to underwrite Plaintiff's IPO and then *withdraw* its offer. The potential underwriter specifically cited for withdrawing its contract offer the false belief that Defendant SPARTAN had contacted investors and found no interest from investors in Plaintiff SQUAREX, and it therefore assumed that there were significant concerns with Plaintiff's business financial integrity.

28.     As a result of Defendant SPARTAN's breach, Plaintiff, despite its consistent efforts to mitigate its damages and through no fault of its own, has suffered millions of dollars of damages.  More specifically, Plaintiff needed the proceeds of the IPO to resume its clinical trials needed to get approval of its drug SQX770 (hereinafter, "SQX770"), which had been significantly effective for preventing oral herpes or cold sore outbreaks, a condition that afflicts about 50 million Americans, in three of three clinical trials through a major Phase 2 clinical trial conducted at Harvard University and Stanford University, as well as in other clinical sites. As a result, every day that funding for Plaintiff was delayed was one more day until SQX770 could

receive FDA approval, and therefore one lost day of sales in the period of patent exclusivity. Thereby, every day the IPO and funding for SQUAREX is delayed, Plaintiff is losing ONE MILLION ($1,000,000.00) DOLLARS or more ***per day***.

29.     At all times relevant to this Complaint, as a result of Defendant's breaches, Plaintiff has been caused to suffer significant pecuniary losses of *millions of dollars* in their attempts to mitigate the effects of Defendant's breach, as well as remitting payments to agents for the now-withdrawn IPO.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

30.     Plaintiff restates the above-mentioned paragraphs with the same force and effect as if stated herein.

31.     Plaintiff and Defendant SPARTAN entered into a valid agreement for Defendant SPARTAN to perform services related to the necessary steps pursuant to facilitating Plaintiff's IPO.

32.     Plaintiff duly performed its obligations pursuant to the agreement by performing the necessary due diligence pursuant to facilitating the now-withdrawn IPO, including but not limited to providing the necessary business disclosure documents and other relevant information to the appropriate regulators.

33.     Defendant SPARTAN breached their obligations by failing to satisfactorily perform the services, or indeed to make any attempt to perform the services, as promised in the agreement.

34.      Specifically, Defendant SPARTAN breached its contractual obligations by abruptly terminating the agreement—without notice and without sufficient or any cause of justification and in plain violation of the terms of the contract—placing Plaintiff in a significant vulnerable position concerning its business reputation and substantially delaying the fundraising required for FDA approval and sale of Plaintiff's product. Of note, the aforementioned agreement did *not* allow for early termination.

35.      In addition, Defendant SPARTAN breached the contract by making little or no attempt to contact investors, to arrange meetings with investors, or solicit any investors for the IPO.

36.      As a result of Defendant SPARTAN'S breach, Plaintiff, by and through its delayed and now-withdrawn IPO, has been caused to suffer pecuniary losses of millions of dollars based on conservative estimates of its projected revenue and profit.

37.      As a result of Defendant SPARTAN'S breach, Plaintiff has been damaged in an amount exceeding the jurisdictional limits of all lower Courts which would otherwise have jurisdiction, including but not limited to irreparable reputational harm with potential investors and customers, *which has already* adversely affected Plaintiff's ability to acquire replacement underwriters.

WHEREFORE, PLAINTIFF SQUAREX respectfully demands judgment against Defendant SPARTAN, in favor of Plaintiff, in an amount to be determined by the Court, but in no event less than ONE HUNDRED MILLION ($100,000,000.00) DOLLARS together with any further such relief as this Court finds just and equitable.

## AS AND FOR A SECOND CAUSE OF ACTION
## GROSS NEGLIGENCE AND WILLFUL MISCONDUCT

38.     Plaintiff restates the above-mentioned paragraphs with the same force and effect as if stated herein.

39.     Defendant SPARTAN, a brokerage firm regulated by FINRA, while operating as the exclusive agent, advisor and underwriter of Plaintiff, owed Plaintiff a fiduciary duty to exercise reasonable care over the course of their performance throughout the service agreement with Plaintiff concerning the IPO, including but not limited to the duty of loyalty and the duty of good faith and fair dealing.

40.     Defendant SPARTAN breached its duty of care by failing to—even attempting to—contact or recruit investors pursuant to facilitating the IPO.

41.     Defendant SPARTAN *further* breached its duty of care by abruptly terminating the agreement without adequate cause or justification—in direct violation to the agreement— constituting a material breach of their fiduciary duty and thereby placing Plaintiff in an extremely vulnerable position with respect to its IPO, and eventually leading to its withdrawal.

42.     Defendant SPARTAN, solely through the fault of their conduct, proximately and actually caused Plaintiff significant harm, subjecting Plaintiff to irreparable reputational harm by and through causing potential investors and partners to believe that Plaintiff's business is inherently unstable or lacks financial integrity.

43.     Defendant SPARTAN'S above-mentioned conduct evinces a reckless disregard for the rights of Plaintiff or smacks of intentional wrongdoing, as Defendant—as the exclusive agent, advisor and underwriter owes a fiduciary duty to Plaintiff to act in the best interest of

Plaintiff—willfully and intentionally failed to fulfill *any* of its obligations to Plaintiff with respect to its IPO, despite awareness of the *millions* of dollars at stake and the fact that a withdrawn IPO would cause Plaintiff irreparable harm to both their business and reputation among the investment community.

44.    As a result of Defendant SPARTAN'S conduct, Plaintiff has incurred substantial costs, in remitting payments to its agents for a now-withdrawn IPO as well as pursuing replacement underwriters to mitigate the effects of Defendant's breach, including but not limited to lost profits from *each day* of delay to getting funded and thereby getting its drug on the market.

WHEREFORE, PLAINTIFF SQUAREX respectfully demands judgment against Defendant SPARTAN, in favor of Plaintiff, in an amount to be determined by the Court, but in no event less than ONE HUNDRED MILLION ($100,000,000.00) DOLLARS together with any further such relief as this Court finds just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a.    As to the First Cause of Action, PLAINTIFF demands judgment against DEFENDANT SPARTAN, in favor of PLAINTIFF, in an amount to be determined by the Court but in no event less than ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

b.    As to the Second Cause of Action, PLAINTIFF demands judgment against DEFENDANT SPARTAN, in favor of PLAINTIFF, in an amount to be determined by the Court but in no event less than ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

c.    Costs, disbursements and legal fees associated with prosecuting this action.

d.      Such other and further relief that this Court deems to be just and equitable.


Dated: September 11, 2024
        New York, New York

                                        LAW OFFICE OF VICTOR M. FERARU

                                        Respectfully submitted,

                                        /s/Victor M. Feraru
                                        Victor M. Feraru, Esq.
                                        57 West 57th Street, 4th Fl.
                                        Suite 407
                                        New York, New York 10019
                                        T: (516) 699-2285
                                        E: victor@vicslaw.com

**Verification**

VICTOR M. FERARU, Esq., attorney for the above-mentioned Plaintiff, an attorney duly licensed to practice law before the courts of the State of New York, under penalties of perjury, upon information and belief, that I have read the attached Complaint and believe the same to be true and correct. The basis of my belief is the file maintained by my office, and interviews with Plaintiff.

The reason the Plaintiff has not verified themself is that they are currently not located in the County in which I have my office.

Dated: September 11, 2024
        New York, New York                          /s/Victor M. Feraru
                                                     Victor M. Feraru, Esq.